1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 18-CR-00609(RJD)
                                   :
                                   :
       -against-                   : United States Courthouse
                                   : Brooklyn, New York
                                   :
                                   :
                                   : Tuesday, July 12, 2022
SHELTON, et al.,                   : 12:00 p.m.
                                   :
          Defendants.              :
                                   :

- - - - - - - - - - - - - - X


        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE RAYMOND J. DEARIE
              UNITED STATES SENIOR DISTRICT JUDGE



             A P P E A R A N C E S :

For the Government:  BREON S. PEACE, ESQ.
                        United States Attorney
                     Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                     BY:  KAYLA C. BENSING, ESQ.
                          EMILY J. DEAN, ESQ.
                          DEVON LASH, ESQ.
                          Assistant United States Attorneys


For Defendant 1:     LAW FIRM OF SUSAN K. MARCUS
                        29 Broadway
                        Suite 1412
                        New York, New York 10006
                     BY:  SUSAN K. MARCUS, ESQ.

SAM    OCR    RMR    CRR    RPR

2

```
 1              A P P E A R A N C E S:  (Continued)

 2

 3    For Defendant 3:       LAW OFFICES OF JAMES M. BRANDEN
                                 80 Bay Street
 4                               Suite 7j
                                 Staten Island, New York 10301
 5                             BY:  JAMES M. BRANDEN, ESQ.

 6

 7    For Defendant 5:       LAW OFFICE OF MICHAEL A. MARINACCIO
                                 245 Main Street
 8                               Suite 420
                                 White Plains, New York 10601
 9                             BY:  MICHAEL A. MARINACCIO, ESQ.

10                                        and

11                             LAW OFFICE OF CORY GARCIA, P.C.
                                 245 Main Street
12                               Suite 420
                                 White Plains, New York 10601
13                             BY:  CORY M. GARCIA, SR., ESQ.

14    For Defendant 7:       JOHN M. BURKE, ESQ.
                                 26 Court Street
15                               Suite 2805
                                 Brooklyn, New York 11242

16

17    For Defendant 10:      MEISTER SEELIG & FEIN, LLP
                                 125 Park Avenue
18                               8th Floor
                                 New York, New York 10017
19                             BY:  HENRY E. MAZUREK, ESQ.
                                    ILANA HARAMATI, ESQ.

20

21

22

23

24    Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
                         Official Court Reporter
25                       E-mail:  SMaceRPR@gmail.com
      Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
```

```
                      Proceedings                    3
```

1                        (In open court.)

2            THE COURTROOM DEPUTY:  All rise.

3            (Judge RAYMOND J. DEARIE entered the courtroom.)

4            (Defendants entered the courtroom.)

5            THE COURTROOM DEPUTY:  Can counsel please state

6    their appearance for the record, starting with the Government?

7            MS. BENSING:  Kayla Bensing, Emily Dean and Devon

8    Lash for the Government.  Joined by Special Agent Michael

9    Zoufal of the Federal Bureau of Investigation.

10           MR. MAZUREK:  And good morning.

11           Henry Mazurek and Henry Mazurek and Ilana Haramati

12   on behalf of Anthony Zottola, who is sitting in the jury box.

13           MR. MARINACCIO:  Good morning.

14           Michael Marinaccio and Cory Garcia for defendant

15   Himen Ross, sitting in the jury box.

16           Ms. Macedonio is currently engaged on trial in

17   New York County and cannot be here.

18           MS. MARCUS:  Good afternoon.

19           Susan Marcus on behalf of Bushawn Shelton, who is

20   seated in the jury box in the middle.  Thank you.

21           MR. BRANDEN:  Good afternoon.

22           Jim Branden for Mr. Codner.  He is third from the

23   left in the jury box.

24           MR. BURKE:  Good afternoon, John Burke for

25   Mr. Lopez.  He's in the jury box, second from the left.

Proceedings                                          4

1          THE COURTROOM DEPUTY:  Thank you.

2          MR. BURKE:  And Mr. White could not be here today.

3          THE COURTROOM DEPUTY:  Thank you.

4          (Pause.)

5          THE COURTROOM DEPUTY:  All rise.

6          (Judge RAYMOND J. DEARIE entered the courtroom.)

7          THE COURT:  Good afternoon, everyone, I assume.

8    Please be seated.

9          MR. MAZUREK:  Good afternoon.

10         THE COURTROOM DEPUTY:  This is a criminal cause for

11   a status conference, docket number 18-CR-609, USA versus

12   Bushawn Shelton, Arthur Codner, Himen Ross, Alfred Lopez,

13   Anthony Zottola.

14         Counsel have already stated their appearance for the

15   record.

16         THE COURT:  All right, thank you, Catherine.

17         Well, at least we are approaching the long-awaited

18   trial.

19         Before I get into what I have on my mind, moments

20   ago I received a revised stipulation and protective order,

21   which I've now signed.

22         Catherine, you can have that.

23         Folks, a few things.  You have buried me with

24   motions, but we'll do our best.  We've been doing out best to

25   get through them, and have managed to pretty much do that.

                   SAM    OCR    RMR    CRR    RPR

Proceedings                                    5

1        We are going to have a questionnaire.  I would like

2   the proposed questionnaire on August 5th, and so you are going

3   to have to confer and get along for a while.

4        Now, the problem, of course, is with the COVID

5   protocols, somewhat relaxed, but nevertheless, still in place.

6   We are going to have to distribute those questionnaires on two

7   dates to the prospective jurors, August 16th and 18th.

8        Ordinarily, what I do is the practice is introduce

9   the lawyers and the parties to the prospective jurors, say a

10  few words about the questionnaire.  So, that would require two

11  sessions and may, in fact, require four.  They're brief, but I

12  don't feel comfortable just giving the jury a questionnaire.

13  I want them to understand it.  If they take their time and use

14  it and fill it out thoroughly, it will save us all, including

15  them, the time going forward.

16       I expect you, all of the lawyers, once the

17  questionnaires are submitted and everybody has them, I am

18  going to give you some time to review them, obviously.

19       The first piece of business will be that the clerk's

20  office will randomly number the questionnaires sequentially so

21  that you know in what order you should be reviewing these

22  questionnaires.

23       I am going to want follow-up questions from you.  If

24  a particular questionnaire is perfect, so to speak, I will

25  engage every juror, no matter what the status of their

Proceedings                                    6

1   questionnaire, in open court so that you have some sense of

2   each juror.  But I will need a list of follow-up questions in

3   time so that we can mark our questionnaires and facilitate

4   that process.

5            I am going to partially sequester an anonymous jury.

6   Given the nature of the charges and the projected length of

7   the trial, I think that's not only a prudent choice, but one

8   that is, ultimately, in everyone's interest.  Obviously, with

9   the questionnaires you are going to receive a lot more

10  information than you ordinarily would.  And if it's handled

11  routinely, as I have done in the past, matter of factually,

12  there is minimal, if any, risk of prejudice.  So, an anonymous

13  jury partially sequestered, depending upon the circumstances

14  as they evolve.  So, let me give you these dates.

15           Questionnaires will be distributed and the

16  randomness required by statute will be accomplished by the

17  juror personnel who will randomly assign numbers to these

18  jurors.  If anybody has a problem with that, in terms of the

19  random demarcation of the specific jurors, speak now.

20  Otherwise, you will get the questionnaires in numerical

21  sequence so you know where to start.  And then I will expect

22  you to confer.

23           To the extent that you can agree on jurors that

24  should be excused on the basis of questionnaires, I don't want

25  to meet them.  We don't want to spend time interviewing such

Proceedings                                    7

1   people.  And I will expect you to proceed in good faith and

2   get me a list of jurors who will be excused.  Nobody wants to

3   needlessly examine a juror who is clearly not qualified for

4   one reason or another.  So, I think that's that.

5          We are proceeding on the 24th with jury selection.

6   As of now, we are proceeding as we are constituted.  More

7   about that in a minute.  So, the motion for the questionnaire

8   is granted.  The motion for the anonymous partially secured,

9   sequestered jury is granted.

10         Mr. Codner and Mr. Lopez have made a motion to

11  dismiss.  It is denied.

12         MR. MAZUREK:  Judge, I'm sorry, can we just -- I

13  think you were going to provide dates for the questionnaires

14  and I don't think you had done that.

15         Can we ask when you're going to distribute the

16  questionnaires?

17         THE COURT:  I thought I said August 16th and

18  August 18th.

19         MS. HARAMATI:  Your Honor, sorry, the date we were

20  going to receive them from the clerk's office and the dates

21  that the Court would like the parties to agree on the jurors

22  excused for cause, and the date for follow-up proposed voir

23  dire.

24         THE COURT:  Follow-up, okay.

25         MS. HARAMATI:  Follow-up.

Proceedings                                    8

1          THE COURT:  I will give you all these dates.  There

2   will be an order that follows this session.

3          MS. HARAMATI:  Thank you, Your Honor.

4          THE COURT:  Okay.  But you get the general how we're

5   going to go about it.

6          I started to say, Mr. Codner and Mr. Lopez have made

7   a motion to dismiss the indictment valid on its face, and that

8   motion is denied.

9          DEFENDANT LOPEZ:  Your Honor, I would like to speak.

10          THE COURT:  I'm sorry.

11          DEFENDANT LOPEZ:  Alfred Lopez, I would like to

12   speak.

13          THE COURT:  Yes, sir.

14          DEFENDANT LOPEZ:  When I filed the motion to dismiss

15   with alternative Bill of Particulars, I was -- Federal

16   Criminal Practice, Revision 10, by James Publishing, it told

17   me that I have 14 days after my indictment to receive a Bill

18   of Particulars.  It's been already forty -- forty months and I

19   haven't received a Bill of Particulars yet.

20          That's why I filed the motion to dismiss with

21   alternative Bill of Particulars.  I was under the impression

22   that I had -- by law, I was entitled to a Bill of Particulars

23   14 days after my indictment.

24          THE COURT:  Okay, thank you.

25          MR. BURKE:  So, Judge, I spoke to Mr. Lopez about

Proceedings                                              9

1    this this morning.  I told him he is going to have to show me

2    a case and some law and I'll get back to him and we'll take

3    care of that.

4                THE COURT:  Okay.

5                MR. BURKE:  And, Judge, just leading back for one

6    second, Your Honor.

7                The dates of August 16th and 18th where the

8    questionnaires are distributed, it's your practice, if I

9    remember right, Judge, that the lawyers are in court that day?

10               THE COURT:  Yes, the lawyers and the parties.

11               MR. BURKE:  Right, and we see the jurors.

12               THE COURT:  And by the way, clothing, get on the

13   stick with clothing because I am not going to hold any

14   proceedings up while we search the courthouse looking for

15   civilian clothing.

16               You all know how to do that and if you don't, talk

17   to the marshal.

18               Do you have something you want to add?

19               MS. BENSING:  No, Your Honor, and we can -- our

20   office, of course, will help facilitate that.

21               THE COURT:  There are two of the motions that I am

22   still working on.

23               One is, there are various motions to suppress.  I'm

24   almost done, but I'm not quite there yet.

25               And then there is this motion that came up most

SAM     OCR     RMR     CRR     RPR

Proceedings                                          10

1    recently about taint.  I have had the opportunity to read what

2    you submitted, including the examples submitted by

3    Mr. Mazurek, and I must say I don't see any problem there, but

4    in the interest, because it is an important matter, I will

5    take my time with it and get back to you later in the week.

6    But I don't think a hearing is going to be justified, or much

7    less required, based upon what I have.

8              Now, in that same vein there are motions for

9    severance by Mr. Shelton and Mr. Zottola on the theory of

10   antagonistic defenses.  I mean I'll be blunt, I have some

11   reservations about it.  I'm not quite there with it.  I'm not

12   going to receive ex parte submissions, it is too important an

13   issue.  The defense has disclosed the essence of their

14   defenses and if they care to develop those, that argument, I'd

15   be happy to consider it.  Antagonistic defenses is a tricky

16   little rascal, and I invite any further submissions that

17   Mr. Shelton or Mr. Zottola want to make.  But as of now, I

18   will defer on those.

19             And I have to defer on the taint because I just have

20   not had an opportunity to do anything more than read the

21   papers and look at the proposed examples.  I suspect a hearing

22   is not going to be called for.

23             And then the only other matter is the multiple

24   motions to suppress, which I just need a little bit more time

25   on.

Proceedings                                           11

1         And 404(b) we'll defer, we just really started on

2    that.

3         Look, I'll be candid with you, a Bill of

4    Particulars, Brady, Giglio, I understand you have to make

5    these motions.  There's been such an exchange of information,

6    as is apparent just reading the defense papers, let alone the

7    Government's papers, that I'm not going to go there.  We have

8    a practice here that if you have a particular problem and you

9    think you're entitled to some information you don't already

10   have, talk to your adversary.  Then and only then if you think

11   you have a justifiable cause to complain to me, feel free to

12   do so.  But there's been a volley of information exchange for

13   a long time and I note there's no secret to anybody what's

14   going on here or what the general nature of the proof is going

15   to be.  And that's that.

16        All right, anything else the Government wants to

17   talk about?

18        MS. BENSING:  Your Honor, in terms of trial

19   logistics, I understand the Court is still considering

20   severance motions.  So, that may impact things.

21        THE COURT:  Of course.

22        MS. BENSING:  But, otherwise, does the Court intend

23   to try the five defendants in this courtroom or is it a little

24   bit premature for those logistics?

25        THE COURT:  To be honest with you, I'm hoping to try

Proceedings                                                    12

1    everyone here.

2              MS. BENSING:  Okay, thank you, Your Honor.

3              THE COURT:  Though, I can't commit to it.  You know,

4    you read the paper this morning about new COVID issues, I

5    would like to do that, I think it works better for everybody.

6    That's my goal, but I can't commit to it right now.

7              My intention is to try the case five days a week.

8    However, knowing you're all busy and have other things to do,

9    if we make adequate progress, okay, I will consider reverting

10   to a four-day schedule, but we've got to make progress.  And

11   we have other commitments, too.  So, that's my schedule, five

12   days a week for the time being.  If we progress, I am more

13   than happy to give you Friday, but we will always sit four

14   days.  So, if we lose a Monday, we are going to sit that

15   Friday.

16             We have a Labor Day weekend.  We're going to give

17   them an extended break, probably work through lunch on

18   Thursday, give them the balance of Thursday, Friday, Saturday,

19   Sunday, Monday, pick up on Tuesday.  So, you have an idea.

20             Anything else?

21             MS. BENSING:  Just one thing, Your Honor.

22             The Court had asked us at one of the plea

23   proceedings to follow up regarding separation orders that the

24   BOP has in place in this case.

25             We are still trying to work that out and, in

SAM      OCR      RMR      CRR      RPR

Proceedings                                          13

1   particular, I think we will have to move the defendants who

2   are currently housed at the Hudson County Correctional

3   Facility to the MDC for trial.  And I think that should allow

4   us to move some other defendants in this case and, hopefully,

5   have some relief to the separation requests.  Some will have

6   to stay in place, but I just wanted to update the Court and

7   I'll continue to let the defense group know about what's going

8   on.

9                THE COURT:  How many of these fellows are up in

10  Hudson County?

11               MS. BENSING:  I believe there are three there right

12  now, Your Honor.

13               MR. MAZUREK:  Three.

14               THE COURT:  Well, that's got to be prepared.  We are

15  not going to hold the trial hostage to the transporting them

16  from Hudson County.

17               MS. BENSING:  Of course, Your Honor.

18               MR. MAZUREK:  Judge, do you mind if I take the mask

19  off, if I'm okay with it?  I'm vaccinated.  Henry Mazurek on

20  behalf of Mr. Zottola.

21               The one question I have, Judge, with respect to the

22  movement is we still believe, because we've reached -- a

23  recent client just transferred from one facility to another,

24  that there are quarantine requirements that are still in place

25  at the MDC if a person is transferred from one institution to

SAM      OCR      RMR      CRR      RPR

Proceedings                                            14

1  another.

2          This is a crucial time, obviously, for us to be able

3  to meet with our client.  We're about to receive 3500 material

4  in the case, which is, as Your Honor knows, you know, the

5  quintessential part of the preparation before trial in

6  criminal cases still today.

7          Unfortunately, we get it quite late before trial.

8  But so, I'm concerned about the -- I had to say that

9  commentary.  I know you're smiling, but I am concerned about

10  not having access to Mr. Zottola during this critical period.

11         So, I guess my request is if there's going to be

12  movement, can it be done as soon as possible so that it

13  doesn't wait until the eve of trial when we don't have access

14  to our client?

15             THE COURT:  A very reasonable request.

16             MS. BENSING:  I agree, Your Honor.  We'll try to

17  make it happen.

18             THE COURT:  Would you keep me informed throughout

19  the week?

20             MS. BENSING:  Yes, Your Honor.

21             THE COURT:  So I know what's going on with these

22  people.

23             MS. BENSING:  Yes, Your Honor.

24             THE COURT:  Okay.  Anything else?

25             MR. MARINACCIO:  Judge, may I, on behalf of

Proceedings                                                      15

1   Mr. Ross?

2            THE COURT:  Of course.

3            MR. MARINACCIO:  Is there a date by which you want

4   opposition papers to the 404(b)?

5            I ask that because one of the items that the

6   Government is looking to introduce is a homicide charge of

7   which my client was acquitted in Queens County.  That record

8   would be sealed.  It, obviously, will take some time for me to

9   get those records.  I'll have the Court -- I'll submit an

10  order to the Court, but is there a date that the Court --

11           THE COURT:  I'm surprised you don't already have

12  one.

13           THE LAW CLERK:  We did.

14           MR. MARINACCIO:  If it's there, Judge, I'm sorry if

15  I missed it.

16           THE COURT:  No.

17           THE LAW CLERK:  July 29th.

18           THE COURT:  July 29th.

19           MR. MARINACCIO:  July 29th, okay.

20           THE COURT:  And the Government may be able to assist

21  you with respect to that file.

22           MS. BENSING:  Your Honor, I would just note that the

23  Government is seeking to put the fact of the conviction and

24  the subsequent acquittal into evidence, not the underlying

25  facts of the case, Your Honor.

Proceedings                                    16

1          THE COURT:  The fact of the conviction and the --

2          MS. BENSING:  I'm sorry, the fact of the charge and

3    the fact of the acquittal, not the underlying facts of the

4    case, Your Honor.

5          THE COURT:  Including the acquittal?

6          MS. BENSING:  Including the acquittal, Your Honor.

7          THE COURT:  Well, talk to one another, maybe you can

8    facilitate that.

9          MR. MARINACCIO:  Very well, Judge.  Thank you.

10          THE COURT:  Mr. Mazurek, you seem to be...

11          MR. MAZUREK:  I just had a lot of coffee this

12    morning.

13          Judge, yes, there are a couple of things I just want

14    to raise with the Court.

15          The first is I know you have reserved on a set of

16    motions, the Fourth Amendment set of motions and the severance

17    motions.  I suspect we'll just hear in writing from the Court,

18    but we're available, obviously, for oral argument with respect

19    to either sets of motions to answer any questions that the

20    Court might have.  I know it was voluminous in the production

21    of all those materials.

22          THE COURT:  Yes, you certainly put me to work.

23          MR. MAZUREK:  Also, Your Honor, with respect to

24    discovery, there is one discreet issue that I would like to

25    put before the Court.  It may have been buried in the mass of

                   SAM     OCR     RMR     CRR     RPR

Proceedings                                                    17

1    papers.

2          We have worked with the Government, and I will say

3    they have made themselves available to us and we've worked

4    through a lot of issues in getting a lot of materials through

5    the process of meeting and conferring.  The one area that the

6    Government has refused to date to provide prior to the 3500

7    discovery guidelines that the Court has provided in terms of

8    when they were to produce -- and they, I believe, would fit

9    more in the Brady category than the 3500 category -- and we

10   would ask the Court's intervention to produce it now rather

11   than us have to wait until mid-August to receive it.  And

12   specifically, that is, there are a number of statements that

13   were made by the decedent to the FBI and to the Government.

14   There were, at least, one in-person meeting, if not more, that

15   the decedent had during the criminal investigation after he

16   had been violently attacked a number of times.

17         We believe that we have a good faith basis to

18   believe that he provided information to the Government about

19   particulars of the possible assailants who were attacking him.

20   And we know that because in October of 2020, the Government

21   did provide a letter, which they phrased as possible Brady

22   material, as they usually do.  And in that letter, while the

23   sources were not revealed, but the information that was

24   communicated to us, certainly it seemed that the information

25   for a number of those possible Brady material and other

SAM      OCR      RMR      CRR      RPR

Proceedings                                              18

1   possible alternative assailants came from the decedent.

2           We would ask that those 302 reports, which are the

3   source of that material, be provided at this point because the

4   details do matter.  As Your Honor knows, with respect to being

5   able to follow up on leads that might come from that material,

6   we need to know the details and not just the bullet points

7   that were provided.

8           We've asked that from the Government.  The

9   Government believes it's still 3500 material, that the agent

10  who may be seeking to testify about the decedent's statements,

11  as indicated in our papers, I think the Government has a high

12  hurdle to get those things in evidence based on Giles versus

13  California, but those statements, we believe, would provide

14  important information for us now and we won't have the

15  resources or the time to be able to follow those leads if we

16  wait until the 3500 point in the process.

17          THE COURT:  I have your point.  I have your point.

18          MS. BENSING:  Your Honor, the Government does view

19  these as classic 3500 material.  To the extent that they did

20  fall within the Brady category, the Government thoroughly

21  summarized that material in October of 2020 in a letter, Your

22  Honor.

23          I think, if anything, the Government would be happy

24  to provide these for ex parte review by the Court.  Otherwise,

25  the Government can turn them over with its 3500 material.

Proceedings                                          19

1          THE COURT:  What's the problem?

2          MS. BENSING:  Your Honor, these are fairly sensitive

3    statements made by Sylvester Zottola in this case, including

4    information about, among others, other organized crime

5    figures.  Those statements that have been disclosed to the

6    defense --

7          THE COURT:  We're talking about statements by the

8    decedent?

9          MS. BENSING:  Yes, Your Honor.

10         THE COURT:  Identifying other possible assailants?

11         MS. BENSING:  That is one small portion of this.

12         THE COURT:  That's what I heard from Mr. Mazurek.

13         MS. BENSING:  Yes, that's one small portion of the

14   scope of what the victim told the Government, spoke to the

15   Government about, which is memorialized in the agent's notes.

16   That portion has already been disclosed to the defense group

17   in a letter in October of 2020.

18         So, not the report, itself, but I, Your Honor,

19   thoroughly summarized those portions of the 302 report

20   describing what Mr. Mazurek is talking about.

21         So, I think we'd be happy to make them available to

22   the Court for a review in the first instance.  If the

23   Government has missed potentially Brady material that it

24   hasn't already disclosed, I believe that we have fulfilled our

25   Brady obligations in that October 20th letter.

SAM     OCR     RMR     CRR     RPR

Proceedings                                    20

1          THE COURT:  What would the difference be if I

2     ordered you to produce redacted 302s?

3          And would it be any different, in your mind, from

4     what you've already done?

5          MS. BENSING:  I don't think so, Your Honor.

6          So, we could certainly produce that portion of the

7     redacted 302 that has potential Brady material.  I think the

8     defense will find it quite similar to what we've already

9     disclosed in our letter, but we can certainly do that, Your

10    Honor.

11         THE COURT:  Nobody is questioning your good faith on

12    this, it's just a question of judgment.  Because the point is

13    that if there is something to the statements that you have not

14    revealed, that might spark the need for investigation.

15         When are you turning over the 3500?

16         MS. BENSING:  Well, I think our disclosure starts in

17    a couple of weeks.  It's on a rolling basis, up through a

18    date, I think, at some point in August.

19         Your Honor, I don't think we have -- we can turn

20    them over on, perhaps, an attorneys'-eyes-only basis with that

21    initial round of 3500.

22         THE COURT:  I think you've got to turn them over.

23    We're talking about the identification of other possible

24    suspects in the killing.  To wait to the last moment is

25    just paying lip service to Brady, the spirit of Brady.

SAM      OCR      RMR      CRR      RPR

Proceedings                                        21

1          MS. BENSING:  I understand, Your Honor.

2          And to be clear, we did disclose that information

3    that the Court is talking about.

4          THE COURT:  I'm not arguing with you.  I'm just

5    suggesting you turn it over redacted as you see fit, and if

6    Mr. Mazurek and his colleagues aren't satisfied with what they

7    got, I'm here.

8          MS. BENSING:  Sounds good, Your Honor.  Thank you.

9          MR. MAZUREK:  And corollary to that is also, we

10   believe that in addition to the decedent, the Government is in

11   possession of materials that were prepared by one of the

12   victim witnesses, Salvatore Zottola, Anthony Zottola's

13   brother.  That he may have prepared, we believe, based on our

14   investigation things like written diaries or journals

15   identifying during the incidents that he recorded

16   contemporaneously, again, the belief of who or the context in

17   which certain incidents were happening.

18         We believe that those materials are also Brady and

19   not 3500 and should be produced in a similar way as the

20   decedent's statements.

21         MS. BENSING:  Your Honor, I don't think that there's

22   any basis for that.  You know, this is an individual who will

23   be testifying in this case.  He will be subject to

24   cross-examination.  He'll be available, and I think that what

25   the Court is hearing is just real speculation from the defense

Proceedings                                          22

1    side about what may or may not be in those 3500 materials.

2          The Government's discovery productions have been

3    voluminous in this case, and I think that the statements of

4    the Government's witnesses in this case should go over with

5    the 3500 material as they always do, Your Honor.

6          THE COURT:  Well, speculation is all he can do, he

7    doesn't have it.  But I'll tell you what, get me the Salvatore

8    Zottola statements that we're arguing about, I'll have a look.

9    If anything resembles Brady, I will order it revealed.

10         MR. MAZUREK:  Thank you.

11         MS. BENSING:  Thank you.

12         THE COURT:  Anybody else?  Okay.

13         MR. MAZUREK:  I'm sorry, not to hog the time here,

14   but there is one other question I have about the anonymous

15   jury, Your Honor.

16         THE COURT:  Yes, sir.

17         MR. MAZUREK:  I don't know what your past practice

18   has been, but certainly as indicated in some of our papers,

19   there is a modified approach to an anonymous jury potentially

20   where the -- at least, the identity of the jurors are made

21   available to the parties, but not to the public.  We would ask

22   for that modification here.

23         You know, I respect the Court's decision that you

24   believe that one is needed here, despite that there's no

25   evidence or allegation of witness tampering or obstruction of

SAM     OCR     RMR     CRR     RPR

Proceedings                                    23

1   justice-type activities.

2          THE COURT:  Yes, there really is, let's be honest.

3   Go ahead.

4          MR. MAZUREK:  But I would ask that we, at least,

5   because a thorough voir dire is very important given the

6   nature of the allegations here, the press that has been

7   received in the case and expected to continue to be received,

8   it's important for us to know the people about whom we are

9   judging to determine if they are, indeed, qualified to sit as

10  jurors in this -- this life case for our clients.

11         THE COURT:  Right.

12         MR. MAZUREK:  So, we do make that, at least that

13  modification, that slight modification.

14         THE COURT:  Understood.  I've considered it.  I've

15  never done it.  I've considered it.  I've talked to a couple

16  of colleagues about it.  I'm not going to do it.  We are going

17  to have an anonymous jury.

18         MS. BENSING:  Your Honor, the last thing just as a

19  matter of dotting my i's is that the Government would seek to

20  exclude time in this case under the Speedy Trial Act until the

21  start of trial, so August 24th, Your Honor.

22         THE COURT:  Okay.

23         We have a last-minute conference settled for

24  August 10th at 11:00 a.m.  I'll want your request to charge on

25  the day we start trial.  Bear that in mind.

Proceedings                                                   24

1        Our questionnaires will be distributed on the 16th

2    and 18th.  You will get more specific information as that date

3    approaches.

4        I cannot stress more earnestly the need to meet and

5    confer, as the expression goes, over jurors who appear to be

6    not qualified on the basis of questionnaire.  And I'll need

7    your follow-ups, follow-up suggestions a few days before we

8    actually get started, so that we can mark our copies

9    appropriately.

10       We will put an order out with these dates just in

11   case.  That's how I feel.

12       Yes, sir.

13       MR. MAZUREK:  So, the next court conference is going

14   to be August 10th, is that it?

15       THE COURT:  August 10th.

16       MR. MAZUREK:  And if there are needs for things like

17   Daubert hearings or expert discovery?

18       THE COURT:  Obviously, we are going to have to

19   address that need for hearings.

20       MR. MAZUREK:  We're all available all the time.

21       THE COURT:  We are running out of time.

22       MR. MAZUREK:  I know, so --

23       THE COURT:  So, you will be hearing from me shortly.

24       MR. MAZUREK:  Okay.  We're here, ready for you.

25       THE COURT:  Okay.  Thank you, folks.

Proceedings                                25

1          MS. BENSING:  Thank you, Your Honor.

2          THE COURT:  See you next time.

3          THE COURTROOM DEPUTY:  All rise.

4          (Judge RAYMOND J. DEARIE exited the courtroom.)

5          (Defendants exited the courtroom.)

6          (Matter adjourned.)

7

8

9                    *    *    *    *    *

10

11   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

12

13      /s/ Stacy A. Mace              July 12, 2022
     _____   _____
14      STACY A. MACE                  DATE

15

16

17

18

19

20

21

22

23

24

25

SAM      OCR      RMR      CRR      RPR